Judge Robertson
delivered the opinion of the Court.
This is an action of assumpsit by Bryan, against the administratrix and heirs of Thomas Royal, deceased, on a long account, one item of which is a charge for boarding the intestate, his wife and servant, nine months.
The proof is, that Mrs. Royal, the administratrix, is the daughter of the plaintiff; that, being in delicate health, she and her husband came to his (the plaintiff’s house) and lived in the family until Thomas Royal’s death; that they brought with them, their household furniture and a negro boy; that Mrs. Royal, (there being no other white female in the family,) superintended the household, and that the negro boy rendered services in the family; that not long before Thomas *433 Royal’s death, he applied to the son of the plaintiff, (who kept his books,) for a settlement, of his account, at which time there was no charge in the account for board, the son never having heard that there was to a charge, hut that he stated then to the son, that “lie was to pay for his board. This was all the evidence of any contract for board.
Verdict o‘fthe jury, &c;
The i&w will Mot imply a pay for*board Admission by hutband that pa/fo/his board,” authorizes the made a contract to that b'1}. does not bind him to pay a°fr¿Vwife & servant. The’ act of Viririuia, of 1663, 2 Lift, laws, 583, in force. That act does not require • there shall be special agreement, as to the price to be paid for board: but a positive contract to pay.
*433 The jury found a verdict for the whole account for Boarding the husband, wife and servant, for nine months, a portion of which, ás charged, is subsequent to the ¡date of the writ.
The only question which it is material to decide (and which is presented by motions for instructions and for a new trial) is, whether the evidence justifies the verdict and the jiidgmént of the court upon it, for the hoard?
We know nothing of the circumstances of the par-, ties, and therefore, can say nothing of the morality of the charge for hoard; Without some peculiar reason for it, such mercenary hospitality to a sick daughter and her husband, would be unnatural, and to the honor of the paternal sympathies and regards of our countrymen, has been exceedingly unusual. But the jury, in this case, having found a verdict for the entire, charge, it is to be inferred,that they had a knowledge of facts which induced them to consider'the account reasonable and just.
But without the declaration of Thomas Royal, when he proposed to pay for his board, the evidence would surely not have authorized a verdict. The law will not imply a contract to pay for board. Such implication would do violence to the other circumstances in the proof in this case, and is forbidden by positive law. Nor could this admission by T. Royal, when construed most rigidly against him, justify a verdict for more than his own board. The declaration goes no farther, and a more extensive operation cannot be given to it, without distorting the other facts in the case, or entirely disregarding them. The verdict, therefore, should d ° ’ ’ have gone no farther.
. It is insisted by the counsel for the plaintiff in error, that the acknowledgement of T. Royal, does' not sus *434 tain ibe finding, even for the value of his individual board; and they rely on a statute of the colonial legislature of Virginia, in 1663. 2 Littell’s laws, 583, in the following words: “Beit enacted, that no person not making a positive agreement with any one he shall entertain into his house for diet or storage, shall recover any thing against any one so entertained, or against his estate, but that every one shall he reputed to entertain those of courtesy with whom they make not a certain agreement.'1'1 We'are not aware, of any abrogation of this statute by legislative authority, or by dissuetude in Virginia or Kentucky. Consequently it must be recognized, as we believe it has been, as in full force.
The acknowledgement of T. Royal, that he was to pay for his board, is not proof of a direct, express or positive agreement to pay a specified amount. And such acknowledgement, under the circumstances attending it, might reasonably receive different constructions. It might be interpreted either as evidence of an intention or wish on his part withoutany other than a supposed honorary obligation to pay for his board, or of a contract to pay either the customary amount, or whatever the board might be worth. And although, giving due effect to all the facts of the case, we should incline to give to the acknowledgement the first construction; the jury was allowed, by the nature of the evidence, to give to it the last. They might infer that a contract had been made, and that the contract was for the payment of a reasonable or the customary-price. If he had possitively agreed with Bryan to pay him the usual price for his board,such agreement -would be sufficient to bind him, under the act of 1663. For that act' does not require, by its letter or its object, that there shall be a special agreement to pay a certain sum, or in any given mode. It only requires that there shall be a positive or express contract to pay. And an agreement to pay what the board may be worth, or what is customary, would be as much a positive or express contract, as it would be if a particular sum should be stipulated. If a contract for a certain amount should be required, still a promise to pay the common price, would virtually be such a contract; “Id cerium estp quod cerium reddi potest
Verdict, in part, against law and evidence: a new trial must bs granted.
Haggin and Combs, for plaintiffs; Chinn, for defendant.
As the jury might have deduced from the declaration of T. Royal, a promise; to pay for his board, the usual price, this court would not control their verdict to that extent, although the weight of probabilities might be opposed to the finding.
But as they have found damages for the non-payment for the board of Mrs. Rojal and the servant, not only without but against the evidence and the law, the verdict canno't be sustained.
The amount found, also seems to include some time after the institution of the suit. This is certainly wrong. Bnt we suppose it probable that this anomaly is produced by some mistake in dating the year of the board, in the account. As the cause must, for (he other objection, be reversed, it is not necessary that we should say more on this, thau to refer to it and state that if there be no mistake in the date of the account, the v.erdict and judgment should have excluded the time subsequent to the date of the writ, and all time posterior to the death of T. Royal.
Judgment reversed, and cause remanded for a new trial.